ELLIS, Judge.
This case involves a non-resident attachment. Defendant filed a motion to dissolve the attachment upon the grounds that he is presently a resident of Baton Rouge and domiciled in Louisiana. After a hearing upon a rule nisi to show cause why the non-resident attachment should not be dissolved, the trial court decreed that the rule be made absolute, dissolving the attachment.
Plaintiff obtained and perfected an appeal to this court seeking to reverse the district court and reinstate the non-resident attachment.
Defendant-appellee has filed no brief to support his cause on appeal. This is greatly disfavored by this court and other appellate tribunals. Levy v. Clemons, La.App., 3 So.2d 440; Burden v. Peoples’ Homestead & Savings Ass’n, La.App., 167 So. 487, 489. The last cited case states our view clearly:
“We are certainly justified in expecting ’every counsel in a case to give the court what help he can. The least we can expect is that he file briefs, setting forth his contentions and citing the law’ upon which the contentions are based.”
As the dissolving of the attachment in this case is based upon defendant’s domicile, the sole question to be decided is whether defendant has actually acquired a Louisiana domicile.
Plaintiff appellant has correctly set forth a statement of the law on acquiring a domicile as stated in the Succession of Simmons, 109 La. 1095, 34 So. 101, which was followed and cited in First National Bank of Lumberton, Miss. v. Hinton, 123 La. 1018, 1023, 49 So. 692, 694; Texana Oil & Refining Co. v. Belchic, 150 La. 88, 90 So. 522; Rappeport v. Patten, La.App., 3 So.2d 909; Clarke v. Patton, La.App., 16 So.2d 585, 586:
“ ‘The party who seeks to avail himself of a change of domicile bears the burden of proving it. So long as any reasonable doubt remains, the presumption is that it has not been changed. The domicile of origin continues until another is acquired, animo et facto.’ ”
In this case no evidence was adduced as to defendant’s original domicile but it was established that he acquired a Texas domicile. The facts that support this are his residing and buying a home in Texas, his forming a partnership in Texas, his voting there and declaring a Homestead *421 Exemption as late as 1955. The following evidence tends to support his contention of acquiring a Louisiana domicile. First and foremost, he dissolved his Texas partnership and presently has no business connections in Texas. He has moved his family to Baton Rouge and entered his child in school there. He has bought stock in and is presently seeking to enlarge the business of a corporation known as Cast-o-Brick. Although he has been paid no wages as of the time of the hearing, he expects to earn a living selling building supplies. There were several witnesses who corroborated both the defendant’s and his wife’s testimony.
After weighing the evidence both pro and con it appears that the defendant has severed the ties of his Texas domicile and does intend to and has, in fact, made Louisiana his newly acquired domicile. Although he has claimed a homestead exemption in Texas it was for tax purposes; this does not supply the necessary intent to make it his home. The seizure was made at such a short time after defendant had moved that his failure to change his license plates to Louisiana has little probative value.
The testimony at the hearing disclosed that defendant was presently engaged in extensive traveling in an attempt to obtain enough dealers in Cast-o-Brick to purchase a franchise. This fact explains his seeming laxity in such matters as automobile license, registering to vote, obtaining a Louisiana bank account. Possibly his failure to obtain a bank account is due to his creditors pursuing him to his new domicile — in any event, the trial judge had sufficient evidence to support his ruling.
With due respect to appellant, we feel that his well-prepared brief deserves an answer to the arguments he set forth.
The cases on which he relied had much stronger facts evidencing the intent to retain the original domicile. In the First National Bank of Lumberton, Miss. v. Hinton, supra, the defendant had a going business in Mississippi and returned to Mississippi annually. He acquired a residence in Louisiana to be near his daughters while they attended Newcomb. Although he joined civic clubs and established a Louisiana branch to his business, the court found he intended to retain Mississippi as his permanent domicile. In the present case defendant Campbell has no business interests in his former domicile and is renting his former home.
In the Texana Oil & Refining Co. v. Belchic case, supra, the defendant had made statements and executed documents, some giving Louisiana as his residence, some Pennsylvania. The controlling facts in this case appeared to be that he was born and raised in Pennsylvania and was graduated from college there. The nature of his work caused him to reside temporarily in many states, the last being Louisiana. There is no strong evidence of these type facts in the case at bar.
Rappeport v. Patten, supra, had very similar facts to the case at bar. In the Rappeport case the defendant retained Texas license plates and moved to Louisiana, registering as a permanent guest in a hotel on April 30, 1940. Suit was instituted on May 17, 1940. Defendant and his wife made several trips to Texas and as late as April 30, 1940, defendant in recorded instruments had declared his residence to he Houston, Texas. In the instant case we have no declarations save those of defendant that support his intent to make Louisiana his domicile.
In Clarke v. Patton, supra, there were several written declarations of a legal residence in Kennard, Texas, the defendant’s birthplace. He has also registered to vote in Houston, Texas. The key facts in that case, however, were that the defendant in applying for a job in Louisiana gave his present address as Sulphur, La., and his legal address as Kennard, Texas, on Au *422 gust 30, 1943. On September 1, 1943, he and plaintiff allegedly collided in an automobile accident. On September 7, 1943, he terminated his employment and in the termination papers he again gave his “legal voting address” as Kennard, Texas.
It is easily ascertained that such facts with evidence of “intent” are nowhere to be found in the present case.
For the reasons assigned, the judgment of the lower court is affirmed.